UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUIS CALDERON,<br><br>               Petitioner,<br><br>   v.<br><br>KRISTI NOEM et al.,<br><br>              Respondents. | CASE NO. 2:25-cv-2136-LK-TLF<br><br>ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION AND DENYING HABEAS PETITION |

This matter comes before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Theresa Fricke, Dkt. No. 11, Respondents'[1] objections, Dkt. No. 12, and Mr. Calderon's response, Dkt. No. 13. For the reasons discussed below, the Court declines to adopt the R&R, and denies the petition for a writ of habeas corpus.

## I.    BACKGROUND

The facts of this case are not in dispute. Mr. Calderon is a citizen of Peru who entered the United States on or about March 5, 2002, when he was 15 years old. Dkt. No. 1 at 5; Dkt. No. 8 at

---

[1] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION AND DENYING HABEAS PETITION - 1

2. He was apprehended by the Department of Homeland Security ("DHS") on or about January 2, 2008, and was issued a Notice to Appear, initiating removal proceedings under Section 240 of the Immigration and Nationality Act ("INA"). Dkt. No. 1 at 5; Dkt. No. 9-2. Mr. Calderon was released by DHS on a $3,000 bond on the same day. Dkt. No. 1 at 5. He was subsequently re-detained by the DHS on or about August 19, 2012, after he was arrested for public intoxication. Dkt. No. 8 at 2. An immigration judge held a custody redetermination hearing and ordered his release upon payment of a $10,000 bond on September 10, 2012. *Id.* at 2.

In 2013, Mr. Calderon filed an application for Special Rule Cancellation of Removal as a noncitizen who has been battered or subjected to extreme cruelty by a United States citizen or permanent resident spouse or parent, pursuant to Section 240A(b)(2) of the INA. *Id.* at 3; Dkt. No. 1 at 5. An immigration judge found him ineligible for the requested relief, and he appealed that decision. Dkt. No. 1 at 5. The appeal remains pending with the BIA after a remand from the Ninth Circuit in July 2025. *Id.*; Dkt. No. 1-3 at 16–22. Mr. Calderon was re-detained in April 2025 after being arrested for a theft. Dkt. No. 1 at 6; Dkt. No. 8 at 4; Dkt. No. 9-7 at 5. He was charged with Grand Theft of Personal Property in violation of California Penal Code § 487(a), a misdemeanor, on May 7, 2025. Dkt. No. 8 at 4. On April 17, 2025, ICE issued a warrant for arrest leading to his re-detention pursuant to 8 U.S.C. § 1226. *Id.* at 4.

The charge of theft was dismissed by the Superior Court of California on July 30, 2025 for lack of a speedy trial. *Id.*; Dkt. No. 9-9 at 2. Mr. Calderon remains in custody at the Northwest ICE Processing Center in Tacoma, Washington. Dkt. No. 1 at 6.

Mr. Calderon filed a petition for a writ of habeas corpus with this Court on the grounds that his due process rights were violated by Respondents' failure to provide a hearing before a neutral decisionmaker before he was re-detained in April 2025. *Id.* at 11. As a remedy for these violations, Mr. Calderon seeks immediate release. *Id.* at 2, 9, 11. Respondents opposed the petition, arguing

that (1) the Laken Riley Act ("LRA")—which mandates detention for an inadmissible noncitizen who is arrested or charged with a crime of theft—does not require a pre-detention hearing and "requires prompt detention of noncitizens that fall within its purview," Dkt. No. 7 at 1; *see* 8 U.S.C. § 1226(c)(1)(E)(ii); and (2) Mr. Calderon's re-detention satisfied procedural due process under *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976); *see* Dkt. No. 7 at 5–8.[2]

In response, Mr. Calderon conceded that he was subject to the LRA at the time of his re-detention, but argued that he was still owed a pre-deprivation hearing. Dkt. No. 10 at 5–9. Mr. Calderon also disputed Respondents' *Mathews* analysis. *Id.* at 4–9. He also contended for the first time that "he was no longer subject to mandatory detention once the charges were dismissed." *Id.* at 2.

### A.    Judge Fricke's Report and Recommendation

Judge Fricke recommended granting Mr. Calderon's petition. Dkt. No. 11 at 1. She agreed with Mr. Calderon that the LRA should be read to apply only to those inadmissible noncitizens who are *currently* "charged with" crimes of theft, such that when Mr. Calderon's charges were dismissed, the LRA's mandatory detention provision ceased to apply to him. *Id.* at 4–5; *see also id.* at 4 (citing *Helbrum v. Williams*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *1 (S.D. Iowa Sept. 30, 2025) with approval for the proposition that the LRA's detention mandate ends after charges are dismissed, because at that point "it is no longer accurate to say that a person 'is charged with' theft (present tense)").

Judge Fricke also found that the *Mathews* procedural due process factors weighed in Mr. Calderon's favor. First, she found that the private interest prong weighed in his favor because "[he] was detained for months and remains in custody" and his "interest in not being detained is 'the

---

[2] Respondents also asserted that the "continuation of Calderon's approximate 7-month detention without a bond hearing does not violate due process," Dkt. No. 7 at 8–11, but as discussed below, this issue was not raised in the petition.

ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION AND DENYING HABEAS PETITION - 3

1  most elemental of liberty interests[.]'" *Id.* at 6 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529
2  (2004)). Second, she found that Respondents' statutory mandate to detain inadmissible noncitizens
3  charged with theft under the LRA did not "eliminate its obligation to effectuate the detention in a
4  manner that comports with due process" under the Constitution, and that given Mr. Calderon's
5  private interest in not being detained, his interest in liberty "is a constitutional right which may
6  only be revoked through methods required by due process, such as a hearing in front of a neutral
7  party to determine whether petitioner's re-detainment is warranted." *Id.* at 7–8. Finally, Judge
8  Fricke found that Respondents had no interest in arresting and detaining Mr. Calderon without a
9  hearing because the LRA did not apply to him any longer and Respondents had "identified no
10 legitimate interest that would support the specific detention of Petitioner without a pre-detention
11 hearing." *Id.* at 8 (quoting *Ramirez Tesara v. Wamsley,* No. 2:25-CV-01723-MJP-TLF, 2025 WL
12 2637663, at *4 (W.D. Wash. Sept. 12, 2025)).

13 **B.      Respondents' Objections**

14       Respondents filed objections to the R&R. Dkt. No. 12. They object to the finding that the
15 LRA no longer applies to Mr. Calderon because (1) the statutory language indicates that
16 subsequent events are irrelevant and (2) the due process analysis must consider only "the
17 circumstances as they were on the date of [his] redetention." *Id.* at 2, 4–5. Respondents also object
18 to Judge Fricke's finding that the second and third *Mathews* factors weigh in favor of Mr. Calderon.
19 Regarding the second *Mathews* factor, Respondents argue that Judge Fricke erred in holding that
20 the due process requirement of the availability of a "prompt individualized hearing before a neutral
21 decisionmaker" mandates that that hearing be *pre*-(re)detention. *Id.* at 6 (citing Dkt. No. 11 at 8
22 and *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1173 (W.D. Wash. 2023)).
23 Rather, Respondents argue that the availability of a *post*-detention *Joseph* hearing satisfies the
24

individualized hearing requirement. *Id.* at 7; *see* 8 C.F.R. § 1003.19(h)(2)(ii); *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999).

With respect to the third *Mathews* factor, Respondents argue that the relevant inquiry is the governmental interest at the time of Mr. Calderon's arrest and re-detention—when it is undisputed that the LRA applied to Mr. Calderon. *Id.* at 7–8. "Thus, the enforcement of the LRA is a relevant, legitimate, governmental interest concerning his redetention." *Id.* at 8. Respondents argue that even if the Court finds that the LRA no longer applies to Mr. Calderon, "the appropriate relief would not be his immediate release"; "his detention would then still be authorized under 8 U.S.C. § 1226(a), as his removal proceedings are ongoing, and the appropriate relief would be a bond redetermination hearing in the immigration court." *Id.*

**C.     Mr. Calderon's Response**

Mr. Calderon urges the Court to adopt the R&R. Dkt. No. 13. According to Mr. Calderon, Respondents' argument that the lack of a pre-detention hearing did not create the risk of erroneous deprivation of rights under the second *Mathews* prong fails to account for his previous detention and release. *Id.* at 4. Specifically, he contends that the "period of release modifies the requirements of due process because it increases the weight of the liberty interest," *id.* (quoting *Duong v. Kaiser*, No. 25-cv-07598-JST, 2025 U.S. Dist. LEXIS 185024, at *18–19 (N.D. Cal Sept. 19. 2025)), and the risk of erroneous deprivation "is extremely high when there is a complete lack of a neutral review *prior* to Petitioner being re-detained after already having been free from custody for years on a bond issued by an immigration judge." *Id.*

Mr. Calderon also argues that under the third *Mathews* prong, Respondents have a low interest in detaining him without a pre-detention hearing because such a hearing would save costs compared to a post-detention *Joseph* hearing. *Id.* at 5.

## II. LEGAL STANDARD

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). As the statute and rule suggest, the Court reviews findings and recommendations "*if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *see also id.* ("Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct.").

## III. DISCUSSION

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *see also Ben-Sholom v. Ayers*, 674 F.3d 1095, 1099 (9th Cir. 2012).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

A.     **The Relevant Facts are Those that Existed at the Time of Mr. Calderon's Re-Detention in April 2025**

The Court first clarifies the issue presented by Mr. Calderon's habeas petition and the relevant time frame for its analysis. Mr. Calderon's sole claim for relief is that Respondents violated his Fifth Amendment rights by failing to afford him "written notice or meaningful opportunity to be heard by a neutral decisionmaker *prior to his re-detention*" in April 2025. Dkt. No. 1 at 10 (emphasis added). The petition does not raise a challenge relating to his right to a hearing *after* the charges against him were dropped in late July 2025. Thus, the petition does not raise the issue of whether the LRA "require[d] [Mr. Calderon's] mandatory detention after his charges were dismissed." Dkt. No. 11 at 5. To the extent Mr. Calderon raises this issue in his post-petition briefing, the Court does not entertain it; "[i]t is well-settled . . . that a habeas petitioner cannot amend his petition – much less introduce wholly new claims – in his reply brief." *McClellon v. Rickard*, No. 24-CV-10053 (VSB) (BCM), 2025 WL 3286917, at *10 (S.D.N.Y. June 24, 2025); *see also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("In order for the State to be properly advised of additional claims, they should be presented in an amended petition or . . . in a statement of additional grounds."); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

Mr. Calderon concedes that he was subject to mandatory detention under Section 1226(c)(1)(E)(ii) at the time he was re-detained. *See* Dkt. No. 10 at 2 (arguing that he was "*no longer* subject to mandatory detention" once the charges were dismissed) (emphasis added). Indeed, he emphasizes that "[t]he use of the present tense [in the LRA] establishes that detention is mandatory *so long as* the charges remain pending or are resolved in another way[.]" *Id.*; *see also Helbrum*, 2025 WL 2840273, at *5 ("Petitioner does not dispute that § 1226(c)(1)(E)(ii) required federal officials to take him into custody when he was arrested for and charged with [fifth degree

theft]. The language of the statute is unambiguous in that regard[.]").[3] Therefore, the threshold question here is whether due process required Respondents to provide Mr. Calderon with a pre-deprivation hearing in April 2025, when it is undisputed that the LRA applied to him.

**B.    Mr. Calderon Has Not Established that He was Entitled to a Pre-Deprivation Hearing in April 2025**

Section 1226 of title 8 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

Under Section 1226(c), however, noncitizens who have committed one of certain listed offenses or who have been identified by the government as involved in terrorist activities are subject to mandatory detention. 8 U.S.C. § 1226(c)(1)(A)–(E). As mentioned above, Section 1226(c) was amended on January 29, 2025, with the following additions (shown in underline) and deletions (shown in strikethrough), *see* 139 Stat. 3 (2025):

> (c) Detention of criminal aliens
>    (1) Custody
>    The Attorney General shall take into custody any alien who--
>       (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>       (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

---

[3] To the extent that Mr. Calderon claims that he was owed a pre-deprivation hearing in April 2025 based on charges that were later dropped, this argument fails. The applicability of the LRA is not an exercise in fortune-telling; the relevant facts are those that existed at the time of detention.

ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION AND DENYING HABEAS PETITION - 8

<blockquote>

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year,

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, <u>or</u>

<u>(E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and</u>

<u>(ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,</u>

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) <s>Release</s> <u>Definition</u>

<u>For purposes of paragraph (1)(E), the terms "burglary", "theft", "larceny", "shoplifting", "assault of a law enforcement officer", and "serious bodily injury" have the meanings given such terms in the jurisdiction in which the acts occurred.</u>

<u>(3) Detainer</u>

<u>The Secretary of Homeland Security shall issue a detainer for an alien described in paragraph (1)(E) and, if the alien is not otherwise detained by Federal, State, or local officials, shall effectively and expeditiously take custody of the alien.</u>

<u>(4) Release</u>

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

</blockquote>

The Supreme Court's decisions in *Demore* and *Jennings* addressed the meaning of Section 1226(c) as it relates to bond hearings—at least as the statute existed prior to its amendment through the LRA.

1. *Demore*

In *Demore*, a noncitizen who had been a lawful permanent resident for 10 years (Kim) was detained under Section 1226(c) after he was convicted of first-degree burglary and "petty theft with priors" in California. 538 U.S. at 513. The Immigration and Naturalization Service ("INS") charged him with being deportable from the United States in light of these convictions, and detained him pending his removal hearing. *Id.* Although Kim did not dispute the INS's conclusion that he was subject to mandatory detention under § 1226(c), and "forwent a [*Joseph*] hearing at which he would have been entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category," after roughly six months of detention he filed a habeas corpus action arguing "that his detention under § 1226(c) violated due process because the INS had made no determination that he posed either a danger to society or a flight risk." *Id.* at 513–14.

Holding that Section 1226(c)'s requirement of mandatory detention for certain criminal noncitizens was unconstitutional, the district court granted Kim's petition subject to the INS's prompt undertaking of an individualized bond hearing to determine whether he posed either a flight risk or a danger to the community. *Id.* at 514–15. The Ninth Circuit affirmed, holding that Section 1226(c) violated substantive due process as applied to Kim because the INS had not provided a justification "for no-bail civil detention sufficient to overcome a lawful permanent resident alien's liberty interest." *Kim v. Ziglar,* 276 F.3d 523, 528, 535 (9th Cir. 2002). The court rejected the Government's justification of mandatory detention on the basis that it ensured the presence of criminal noncitizens at their removal proceedings because it found that not all noncitizens detained pursuant to Section 1226(c) would ultimately be deported. *Id.* at 531–532. It also rejected the Government's justification of mandatory detention on the basis that it protected the public from dangerous criminal noncitizens because the aggravated felony classification triggering Kim's

1  detention included crimes that the court did not consider "egregious" or otherwise sufficiently
2  dangerous to the public to necessitate mandatory detention. *Id.* at 534; *see also id.* at 538
3  (characterizing Kim's crimes of first-degree burglary and petty theft as "rather ordinary crimes").

4  The Supreme Court reversed, emphasizing that "[i]n the exercise of its broad power over
5  naturalization and immigration, Congress regularly makes rules that would be unacceptable if
6  applied to citizens." *Demore*, 538 U.S. at 521 (quoting *Mathews v. Diaz,* 426 U.S. 67, 79–80
7  (1976)). It held that Congress—"justifiably concerned that deportable criminal [noncitizens] who
8  are not detained continue to engage in crime and fail to appear for their removal hearings"—"may
9  require that persons such as respondent be detained for the brief period necessary for their removal
10 proceedings." *Id.* at 513; *see also id.* at 528 ("[I]n adopting § 1226(c), Congress had before it
11 evidence suggesting that permitting discretionary release of [noncitizens] pending their removal
12 hearings would lead to large numbers of deportable criminal [noncitizens] skipping their hearings
13 and remaining at large in the United States unlawfully."). In response to a dissent "suggesti[ng]
14 that [noncitizens] are entitled to an immediate hearing," the Court pointed to its holding in
15 *Zadvydas*, which "permit[ed] [noncitizens] to be detained for several months prior to such a
16 hearing." *Id.* at 529 n.11.

17         2.     *Jennings*

18 The Supreme Court's decision in *Jennings* expanded upon the Court's analysis of Section
19 1226(c). *Jennings* involved a class of noncitizens who were detained under Sections 1225(b),
20 1226(a), or 1226(c) pending completion of removal proceedings and who had been detained more
21 than six months without a hearing to determine whether their detention was justified. 583 U.S. at
22 290. The class members argued that the Due Process Clause and these statutory provisions did not
23 authorize "prolonged" detention in the absence of an individualized bond hearing at which the
24 Government was required to prove by clear and convincing evidence that the detainee posed a

danger to society or a flight risk. *Id.* at 291. The District Court entered a permanent injunction requiring the Government to provide such hearings, and the Ninth Circuit affirmed. *Id.* "Relying heavily on the canon of constitutional avoidance, the Court of Appeals construed §§ 1225(b) and 1226(c) as imposing an implicit 6-month time limit on a[ noncitizen]'s detention under these sections," and held that a noncitizen "must be given a bond hearing every six months and that detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." *Id.* at 291–92.

The Supreme Court reversed. It held that "subject only to express exceptions, §§ 1225(b) and 1226(c) authorize detention until the end of applicable proceedings," and that there was no justification for any of the procedural requirements that the Ninth Circuit imposed "without any arguable statutory foundation." *Id.* at 296–97. With respect to Section 1226(c) in particular, the Court emphasized that "by allowing [noncitizens] to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that [noncitizens] detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute"—and the statutory text made clear that detention "*must* continue "pending a decision on whether the [noncitizen] is to be removed from the United States." *Id.* at 303 (quoting 8 U.S.C. § 1226(a)); *see also id.* at 304 ("By expressly stating that the covered [noncitizens] may be released 'only if' certain conditions are met, § 1226(c)(2) [(now § 1226(c)(4))], the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained [noncitizens] under any other conditions."). Notably, the Court also observed that the dissent's interpretation of Section 1226(c), which would require that "[noncitizens] detained under § . . . 1226(c)[] . . . are entitled to bail hearings as soon as their detention begins," was an "utterly implausible interpretation of the statutory language[.]" *Id.* at 312.

### 3. *Mr. Calderon has not Shown a Due Process Violation*

Mr. Calderon does not distinguish his arguments from those of the plaintiffs in *Demore*.[4] And again, he does not dispute that Section 1226(c) made his detention mandatory in April 2025. This is fatal; as the Second Circuit recently observed, *Demore* "instruct[s] that . . . due process does not require an *initial* bond determination for those detained under section 1226(c)[.]" *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024); *see also id.* at 141 ("The Supreme Court has held that detention under section 1226(c) without an *initial* bond determination does not, on its face, violate the detainee's due process rights where detention is 'for the limited period of . . . removal proceedings.'" (quoting *Demore*, 538 U.S. at 531)).[5] Mr. Calderon's arguments are foreclosed by *Demore*.

Consideration of the *Mathews* factors also underscores that Mr. Calderon has not established a due process violation. Respondents did not object to Judge Fricke's finding that the private interest factor weighed in Mr. Calderon's favor, and the Court independently finds that this

---

[4] Other than relying on the blanket proposition that "[d]ue process requires that if DHS seeks to re-arrest a person like Mr. Calderon—who has previously been granted bond by an immigration judge—the government must afford a hearing before a neutral decisionmaker to determine whether any re-detention is justified, and whether the person is a flight risk or danger to the community," Dkt. No. 1 at 6, Mr. Calderon does not advance any constitutional challenge to Section 1226(c)(1)(E)(ii). To the extent there are constitutional infirmities with the LRA, the Court cannot invent arguments for Mr. Calderon. *See Clark v. Sweeney*, No. 25-52, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

[5] This is not to say that a bond hearing is never required for those detained under Section 1226(c). As the Second Circuit observed, "*Demore* and *Jennings* leave open the question whether prolonged detention under section 1226(c) without a bond hearing will *at some point* violate an individual detainee's due process rights." *Black*, 103 F.4th at 142. Most circuit courts that have addressed the issue have rejected a bright-line rule (such as one requiring a bond hearing after six months of detention), and instead have performed an individualized assessment to determine whether the detainee is entitled to a bond hearing. *See, e.g.*, *id.* at 145–55 (holding that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary," and applying the *Mathews* test to determine whether a hearing was necessary); *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) ("[T]he Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention under section 1226(c)." (citation modified)); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020) ("Due process affords [noncitizens] detained under § 1226(c) a bond hearing once detention becomes unreasonable" (capitalization removed)). But as discussed above, Mr. Calderon's petition does not place this issue before the Court.

factor weighs in his favor because he has a fundamental liberty interest in not being detained. With respect to the risk of erroneous deprivation, in light of (1) Mr. Calderon's failure to distinguish his arguments and the facts of this case from those in *Demore*, (2) the undisputed applicability of the LRA to Mr. Calderon at the time of his detention, (3) the immediate availability of a *Joseph* hearing to determine whether the LRA actually did apply, and (4) the availability of a bond hearing at such time as detention has become unreasonable, *see Black*, 103 F.4th at 145–55; *Reid*, 17 F.4th at 7; *German Santos*, 965 F.3d at 210, the Court finds that this factor weighs in favor of Respondents. The cases cited by Mr. Calderon are inapposite because none of them involved mandatory detention (under the LRA or otherwise). See *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1323 (W.D. Wash. 2025); *Ramirez Tesara,* 2025 WL 2637663, at *4; *Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *Domingo v. Kaiser*, No. 25-cv-05893-RFL, 2025 WL 1940179, at *1–2 (N.D. Cal., July 14, 2025); *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1026 (N.D. Cal 2025). Finally, "the government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz,* 53 F.4th at 1208 (quoting *Demore*, 538 U.S. at 518). "The Supreme Court has thus specifically instructed that in a *Mathews* analysis, we 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'" *Id.* (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)). Again, Mr. Calderon agrees that the LRA applied to him at the time of his detention and does not raise a constitutional challenge to the LRA. Accordingly, a pre-detention hearing could have had only one outcome: detention. Based on the arguments properly before the Court, the Court concludes that there was no risk of unnecessary detention and no concomitant savings of administrative costs at the time of Mr. Calderon's detention in April 2025. The Court therefore finds that the governmental interest factor weighs in favor of Respondents.

After weighing the *Mathews* factors, the Court holds that the lack of a pre-detention hearing did not violate Mr. Calderon's procedural due process rights.

Of course, this does not mean that the Court disagrees with the R&R's conclusion that the LRA ceased to require mandatory detention of Mr. Calderon once his criminal charges were dismissed with prejudice. The plain text of Section 1226(c)(4) (previously (c)(2)) provides that "a[] [noncitizen] described in paragraph (1)" may be released "only if the Attorney General decides . . . that release of the [noncitizen] from custody is necessary for [witness protection purposes]." Once the charges were dropped, Mr. Calderon was no longer "a noncitizen described in paragraph (1)"; as of July 30, 2025, he was not a person who "is charged with" one of the enumerated offenses, including theft.[6] However, Mr. Calderon did not raise this issue in his petition, so it is not properly before the Court.

### IV. CONCLUSION

For the foregoing reasons, the Court DECLINES TO ADOPT the Report and Recommendation, Dkt. No. 11, and DENIES the petition for a writ of habeas corpus, Dkt. No. 1. To the extent that Mr. Calderon wishes to challenge his current detention, he is free to file a new habeas petition pursuant to Section 2241.

Dated this 29th day of December, 2025.

Lauren King
United States District Judge

---

[6] In reaching this conclusion, the Court agrees with the reasoning of *Helbrum*, 2025 WL 2840273, at *5–6. *See also Rueda Torres v. Francis*, No. 25 CIV. 8408 (DEH), 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025) ("[D]etention remains mandatory if charges are filed, but it is no longer required if charges are dropped or if a person is acquitted. Any other interpretation would render superfluous the language in the statute requiring detention under circumstances other than when a person 'is arrested for' or 'is charged with' certain crimes.").